THOMAS McGOURTY *vs.* JOSEPH DeMARCO.
JOHN W. O'CONNOR *vs.* SAME.

Worcester.    September 29, 1908. — October 21, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence,* In use of highway. *Law of the Road.*

At the trial of an action of tort against one who, while driving a team upon a public highway upon which were street railway tracks, ran into the plaintiff who had alighted from a street car, there was evidence tending to show that the street cars generally stopped to let off passengers, not where the car stopped on the occasion in question, but at a point marked by a white post seventy-five

feet farther on; that the car was an open car and had just passed the team of the defendant, which was being driven on the right side of the street, that, as the car stopped, the plaintiff arose and attempted to look backward up the street, but was unable to do so because of passengers standing on the running board of the car, that, after the car had come to a full stop, he took a child in one arm, and dismounted on the right hand side and facing the front of the car, and was struck by the defendant's team coming from behind. *Held*, that there was evidence from which the jury were warranted in finding that the plaintiff was in the exercise of due care and that the defendant was negligent.

There is no absolute rule of law requiring one, before dismounting from a street car into a street, to look up and down the street to see if there is any danger from passing vehicles.

One, who is dismounting into a street from a street car, has a right to expect that any one driving up from behind the car will exercise proper care to avoid running into him.

R. L. c. 54, § 2, which provides that the driver of a carriage or other vehicle passing a carriage or other vehicle travelling in the same direction shall drive to the left of the middle of the travelled part of the way, applies to the driver of a team passing from behind an electric street car which has stopped to let off passengers.

The fact that, in passing from behind an electric street car which has stopped to let off passengers, the driver of the team goes to the right of the car, instead of to the left as required by R. L. c. 54, § 2, is evidence of negligence on his part.

TWO ACTIONS OF TORT for personal injuries alleged to have been received by the plaintiffs by being run into from behind, as they were alighting from a street car, by a team belonging to the defendant and driven by the defendant's son. Writs in the Superior Court for the county of Worcester dated June 16, 1905.

The cases were tried together before *Wait*, J. There was evidence tending to show that the car upon which the plaintiffs were passengers was an open car and was going in an easterly direction along Shrewsbury Street in Worcester to Seward Street, that, at some time before reaching Seward Street, the car passed the team driven by the defendant's son and stopped at a point about seventy-five feet before it reached a white post which marked the regular stopping place of street cars going in that direction at that point, that cars usually ran to the white post before stopping for passengers who were to be let off in the vicinity of Seward Street, that the plaintiff McGourty had with him a bundle and a dinner pail, and the other plaintiff, O'Connor, being then about four years of age, was seated with him in company with his, O'Connor's, mother; that, as the car stopped, McGourty rose from his seat, placed

his dinner pail and bundle on the seat, and looked back toward the rear end of the car but was unable to see the street on account of passengers being on the running board; that, after the car had come to a full stop, he took the plaintiff O'Connor in his right arm, and, taking hold of the standard or handle of the car seat with his left hand, stepped off on to the ground, facing toward the front of the car, when they, the plaintiffs, were struck by the defendant's team; that they did not see or hear the team until they were struck.

It appeared from the evidence that it was from eight to ten feet from the street railway tracks to the sidewalk, that Shrewsbury Street was a much travelled thoroughfare in a thickly settled part of the city of Worcester and was the principal street leading to Lake Quinsigamond and Shrewsbury; that there are two car tracks in said street, and that the plaintiff McGourty was familiar with these conditions.

At the conclusion of the evidence, the defendant requested the presiding judge to direct a verdict for him, and to rule as follows: " The driver of the team had a right to expect that the car would stop at or near the next white post, its regular stopping place; and until it had become manifest to him, by circumstances which ought to apprise a person using reasonable care that a passenger was about to get off the car, he was not bound to exercise the same precautions as he would when the car was slackening its speed at or near a regular stopping place, in reference to passengers on the car about to leave the car." The court declined to rule as requested, but under instructions to which no exception was taken left it to the jury to say whether under all the circumstances the plaintiffs were using due care, and whether the defendant, through the act of his son, John De Marco, in driving as he did, was negligent. There were verdicts for the plaintiffs, and the defendant alleged exceptions.

*R. B. Dodge & W. J. Taft,* for the defendant, submitted a brief.

No counsel appeared for the plaintiffs.

SHELDON, J.    1. The judge rightly refused to order a verdict for the defendant. The jury were not bound to believe the testimony offered for the defendant that the car stopped suddenly with a jerk, although this was uncontradicted. *Lindenbaum* v.

*New York, New Haven, & Hartford Railroad,* 197 Mass. 314, 323. They might have found that due care required the driver of the defendant's team, when he noticed that the car was slackening its speed, to anticipate the possibility of its coming to a stop and of passengers alighting, and that he failed to exercise proper care in view of this possibility. And, although the question undoubtedly was close, they might find that the plaintiff McGourty was himself in the exercise of due care. He testified that he looked to the rear of the car before leaving his seat. There is no absolute rule of law which required him to look up and down the street before actually alighting. *Hennessey* v. *Taylor,* 189 Mass. 583. *Murphy* v. *Armstrong Transfer Co.* 167 Mass. 199. *Bowser* v. *Wellington,* 126 Mass. 391. Moreover, he had the right to expect that any one driving up from behind the car would exercise proper care to avoid running into a passenger leaving the car. If the defendant was, as his counsel assumed in their brief, and as the jury certainly might find, attempting to pass the car from behind on his right hand in violation of R. L. c. 54, § 2, the jury might find that this, under the circumstances, was negligence on the driver's part such as McGourty was not called upon to anticipate. *Perlstein* v. *American Express Co.* 177 Mass. 530. The whole question was for the jury.

2. Nor could the second instruction asked for by the defendant have been given. It was for the jury to say what the defendant's driver ought to have expected as to the place where the street car might stop, and what precautions he ought under the circumstances to have taken in driving his own team. Indeed, what already has been said as to the right of the jury to pass upon the whole case is decisive as to this question also. No doubt the circumstances assumed in this request, so far as they were found by the jury, had a material bearing upon the issue of the care or negligence of the defendant's driver; but the instructions given to the jury were not complained of, and we must assume that this branch of the case was properly explained to them with sufficient instructions, as in *Tisdale* v. *Bridgewater,* 167 Mass. 248, 250.

*Exceptions overruled.*